■ In the Matter of KAREN P., a Person Alleged to be Incapacitated, Appellant. MITCHELL OXENHORN, as Commissioner of

the Columbia County Department of Social Services, Respondent. [678 NYS2d 802] —Yesawich Jr., J. Appeal from an order of the County Court of Columbia County (Czajka, J.), entered April 16, 1996, which granted petitioner's application, in a proceeding pursuant to Mental Hygiene Law article 81, to appoint a guardian for the personal needs of respondent.

Respondent, who suffers from Huntington's disease, challenges County Court's order appointing a guardian to assist her in managing aspects of her personal and financial affairs (*see*, Mental Hygiene Law § 81.02 [a]). Inasmuch as petitioner has clearly and convincingly demonstrated (*see*, Mental Hygiene Law § 81.02 [b]) that respondent is in need of the assistance furnished by the court, will likely suffer harm if such help is not provided, and is unable to understand and appreciate the nature of her limitations, we affirm.

The hearing testimony established that the physical and mental impairments occasioned by respondent's illness—a progressive, incurable deterioration of the brain that produces myriad symptoms, including involuntary movements, an unsteady gait, sensory and speech deficits, dementia, paranoia and marked emotional liability—have already had a deleterious effect on her ability to safely carry out the activities of her daily life (*see, Matter of Ehmke*, 164 Misc 2d 609, 614-615). In addition to the obvious danger posed by the combination of respondent's smoking, decreased coordination and impaired judgment—the testimony discloses that she frequently dropped lighted cigarettes causing numerous burn marks on furniture and rugs throughout her apartment—there was also proof that she had, for some time, been unable or unwilling to keep her living quarters reasonably clean; that she may, at times, have eaten spoiled or incompletely cooked food, without realizing the risks posed thereby; and that her carelessness (a characteristic of her illness) has resulted in two kitchen fires, one of which caused substantial damage to the premises.

There was also ample support for County Court's finding that respondent's disease has progressed to the point that she is no longer able to manage her property and financial affairs. Despite the fact that respondent had exhausted her bank accounts at the time of the hearing, was about to lose her apartment when the lease expired and had only $100 in weekly income from a divorce settlement (plus a small sum she claims to earn from selling crafts and babysitting), she refused to apply for any type of government benefits, insisting that she was seeking, and would obtain, gainful employment. The medical testimony established, however, that this is simply another

instance of respondent's inability to recognize the extent and nature of her limitations, as she is not employable. Further, respondent's own testimony regarding her housing situation confirms her inability to comprehend the scope and urgency of that problem, or to realistically evaluate and address the difficulties she faces in resolving it (*cf., Matter of Flowers*, 197 AD2d 515, *lv denied* 82 NY2d 663).

The medical evidence, considered in its entirety, and in conjunction with respondent's own testimony (*see, Matter of Marguerite VV.*, 226 AD2d 786, 788; *Matter of Kustka*, 163 Misc 2d 694, 700) and that of her relatives, provides additional support for County Court's decision (*see, Matter of Lula XX.*, 224 AD2d 742, 744, *lvs dismissed* 88 NY2d 842, 1040). Although both of petitioner's medical experts conceded that respondent was, at the time of the hearing, living alone and managing to care for herself, they also expressed serious doubt as to the continuing feasibility of that situation. One of the doctors explained that persons with Huntington's disease lose their capacity to make reasonable judgments and tend to make decisions that are contrary to their best interests; he also answered affirmatively when asked if he had any "immediate concerns regarding [respondent's] safety or health". The other expert opined, on the basis of his observations of respondent, that she was already suffering from impaired judgment, which would detrimentally affect her ability to perform routine daily activities, and that she needed assistance in dealing with her finances, as well as regular monitoring. These conclusions are buttressed by the observations of her relatives who were in a better position to watch and evaluate respondent on a daily basis (*see, Matter of Kustka, supra*, at 699).

In sum, we cannot conclude that County Court acted, as respondent contends, on the basis of speculation as to the course her disease is likely to take. Rather, it appears, insofar as her medical prognosis is concerned (*see*, Mental Hygiene Law § 81.02 [c]), that respondent's condition is not expected to improve and that a guardian is presently necessary to ensure her continued health and safety.

Mikoll, J. P., Crew III, White and Spain, JJ., concur. Ordered that the order is affirmed, without costs.